### BEUCHLER v. GEORGIA RAILWAY & POWER COMPANY.

1. In extending to power companies generating electricity for public use the right to condemn rights of way or other easements on the lands of others, in order to run lines of wire, maintain dams, etc., the statute (Civil Code, §§ 5240-2) declares that such power of condemnation shall not be used to interfere with any mill or factory actually in operation. The protection accorded to mills and factories extends to appurtenances necessary to their operation, but not to property from which the crude material is taken for supplying such mill or factory.
2. There was no abuse of discretion in refusing an interlocutory injunction.
                        APRIL 17, 1913.

Petition for injunction. Before Judge Ellis. Fulton superior court. January 31, 1913.

*Atkinson & Born* and *Smith & Hastings,* for plaintiff.

*H. H. Dean* and *King & Spalding and Underwood,* for defendant.

EVANS, P. J. The plaintiff in error is the owner of a lot of land containing a granite deposit. The granite is quarried and is crushed into stone of small size and into sand by a rock-crusher located on the premises and near the quarry. The crusher is a machine capable of crushing about 120 tons of rock per day, and is unsheltered by any house or other structure. It is operated by a portable steam-engine, of twenty-horse power, which is enclosed in a very crude shed. The defendant in error is a corporation operating a plant for generating electricity, and proposes to condemn the right to stretch its wires over the premises, by virtue of the Civil Code, §§ 5240-5242. The plaintiff in error seeks to enjoin such condemnation, on the ground that the maintenance of wires heavily charged with electric current over his premises will interfere with the operation of his rock-crusher. On an interlocutory hearing the court refused an injunction.

The statute (Civil Code, §§ 5240-2) confers on a corporation owning or controlling a water-power in this State, or a location for a steam plant, and operating a plant for generating electricity by

water or steam power to be used for lighting towns or cities or supplying motive power to railroads or street-car lines, or supplying light, heat, or power to the public, the right to condemn rights of way or other easements upon the lands of others, in order to run lines of wire, maintain dams, flow-back water, or for other uses necessary to these purposes; but it is declared that the power of condemnation "shall not be used to interfere with any mill or factory in actual operation." The plaintiff's contention. is, that the quarry is incidental to and part of his milling business; that in blasting, pieces of stone may be thrown against the wires, causing them to break and fall, to the injury of the persons working in the quarry; and therefore that the stringing of wires heavily charged with electricity will interfere with his mill or factory. On the other hand, the condemnor contends that the wires are to be strung overhead at such distance from the ground, and more than one hundred feet from the quarry, that the operation of the quarry will not be interfered with; that the only chance of breaking the wires would be from the careless mining of the stone; that the quarrying of stone to obtain crude material is not accessorial to or a part of its milling or manufacture into an article of commercial use; and that a rock-crusher of the character described is not such a mill or factory as is contemplated by the statute. The testimony of both sides revolved around the point of possible injury to persons engaged at work in the quarry. The exact location of the crusher relatively to the proposed course of the wire is made to appear only by photographs; and as the testimony does not disclose that the operation of the crusher, independently of the quarry, will be affected by the stringing of the wires, the legal questions presented are, whether this rock-crusher is such a mill or factory as is contemplated by the statute, and whether the quarry is a part of the mill. We do not deem it necessary to decide whether the "mill or factory" referred to in the statute was intended to apply to such a combination of crude structure and portable machinery as the record discloses this rock-crusher to be. However that may be, clearly it was not the legislative intent, in exempting mills and factories from the operation of the statute, that such exemption should extend to the protection of a quarry from which the rock is obtained which is taken to a rock-crusher to be crushed into smaller pieces. The operation of a flouring mill has no connection

with the cultivation of the wheat used in milling the flour. A yarn or cloth factory is a thing apart from fields given over to the cultivation of the cotton which is manufactured into the yarn or cloth. A quarry is a work for the excavation of stone or mineral; the conversion of such stone or mineral by milling into a commercial article is no part of the business of quarrying, nor vice versa. The statute is designed to protect a mill or factory which is in actual operation. This protection extends to all appurtenances necessary to the operation of a mill or factory, such as the maintenance of a dam in a case where water is the propelling power, and similar adjuncts. But it does not extend to an exemption from condemnation of property from which the crude material is taken to supply a mill or factory and to be converted into a commercial article. We therefore think that under the evidence the court did not abuse his discretion in refusing an injunction.

*Judgment affirmed. All the Justices concur.*